

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable L. L. Geren
County Attorney
Limestone County
Groesbeck, Texas

Dear Sir:

Opinion No. O-4552
Re: Under the facts submitted, can
Precinct No. 4 now be reimbursed
out of the cash of the other pre-
cinct funds by transfer at this
time, and related questions?

We acknowledge receipt of your request for the
opinion of this department on the questions stated therein,
and quote from your letter as follows:

"On June 30, 1941 Road Precincts one, two and
three of Limestone County were heavily in debt and
due to floods which had washed out many bridges,
needed money to rebuild same immediately. Road
Precinct four had a surplus of money and the then
county auditor permitted the commissioner of pre-
cinct four to transfer $700.00 each to Road Pre-
cincts one, two and three for the purpose of re-
building those bridges. This action was taken on
the theory that an emergency existed.

"No scrip or other evidence of indebtedness
was issued by Precincts one, two and three to Pre-
cinct four and no record was made in the minutes
of the Commissioners' Court of the transfer. The
only record of this transaction is on the books
in the county auditor's office and the then county
auditor promised the Commissioner of Precinct
four to pay him back in 1942 the entire $2100.00
out of the funds of the other precincts.

"Road Precincts one, two and three have an
outstanding scrip indebtedness as follows: Pre-
cinct One $72,800.00; Precinct two $122,565.63 and

Precinct Three $98,835.22. These figures are
as of January 1, 1942. These three precincts are
approximately 6 years in arrears in the payment
of the outstanding scrip.

"The Commissioner of Precinct four now de-
sires the auditor to reimburse him out of Pre-
cincts one, two and three from the cash on hand
in these funds prior to the application of any of
this money on the scrip indebtedness.

"The auditor (who was not in office at the
time of the transfer from Precinct four's fund to
the other precincts) wishes to know the follow-
ing:

"(1)  Can Precinct Four now be reimbursed
out of the cash of the other precinct funds by
transfer at this time?

"(2)  If Precinct Four cannot be reimbursed
out of the cash on hand what remedy has it to
recover the sums loaned to the other precincts?

".  .  .  .

"The Commissioner of Precinct four also has
the following problem:  Consolidated Road District
No. 4 which is under his jurisdiction has on hand
surplus money.  The boundary of Consolidated Road
District 4 at one place borders the bank of the
Navasota River.  His Road Precinct four extends
across the river and includes the bridge at this
point.  The bridge needs repairing and he desires
to know if he can use funds of Consolidated four
to repair same since the bridge, on one side,
touches Consolidated four.

".  .  .  .

"The Commissioner of Precinct four also has
another problem which the county auditor desires
to submit to you.  On January 12, 1942 the Commis-
sioners Court passed the following order:

"'The Court orders that bonded road dis-
trict #13 be placed in precinct #4 on condi-
tion that--After the county road and bridge
fund has been divided equally in the four

precincts each receiving 25%, $750.00 shall
then be transferred from precinct #3 to pre-
cinct #4 in the year 1942 and each succeeding
year thereafter until the State shall assume
the bonded indebtedness and refund the moneys
paid in by road district #13 which refund shall go
to the funds of precinct #4 to be spent on roads
in bonded district #13 at which time the trans-
fer of the $750.00 from precinct #3 to precinct
#4 shall cease, and precinct #3 shall be credited
on such payments with the amount of $750.00 in
the year Road District #13 bonds are assumed
(provided $750.00 has been transferred from Pr.
3 to Pr. 4 for that particular year) out of any
cash refund made to Road District #13 from the
Board of County and Road District Indebtedness
of Texas, but district #13 shall remain in pre-
cinct #4.'

"The county auditor desires to know if this
is a valid order.

". . . ."

With reference to your first and second questions,
the articles of Vernon's Annotated Civil Statutes applicable
are:

Art. 1625.  "Each county treasurer shall
keep a well-bound book in which he shall regis-
ter all claims against his county in the order
of presentation, and if more than one is pre-
sented at the same time he shall register them
in the order of their date.  He shall pay no
such claim or any part thereof, nor shall the
same, or any part thereof, be received by any
officer in payment of any indebtedness to the
county, until it has been duly registered in
accordance with the provisions of this title.
All claims in each class shall be paid in the
order in which they are registered.

Art. 1626.  "Claims against a county shall
be registered in three classes, as follows:

"1.  All jury scrip and scrip issued for feeding jurors.

"2.  All scrip issued under the provisions of the road law or for work done on roads and bridges.

"3.  All the general indebtedness of the county, including feeding and guarding prisoners and paupers' claims.

Art. 1627.  "Said treasurer shall enter each claim in the register, stating the class to which it belongs, the name of the payee, the amount, the date of the claim, the date of registration, the number of such claim, by what authority issued, and for what service the same was issued, and shall write on the face of the claim its registration number, the word, 'registered,' the date of such registration, and shall sign his name officially thereto."

As was stated by Justice Hall, writing the opinion of the Court of Civil Appeals in the case of Wilkinson v. Franklin County, 94 S. W. (2d) 1190:

"Article 1625, R. S., clearly denotes the order in which warrants drawn against the county treasury are to be paid, and amounts to an appropriation of the funds in the county treasury of all warrants legally drawn against the several classes of funds in the order of their registration.  And the order of the commissioners' court of Franklin County of July 13, 1934, requiring the county treasury first to pay current warrants drawn against the county general fund ahead of senior registration warrants drawn against said fund is violative of article 1625, R. S., and is therefore void."

Under the state of facts submitted by you it appears that no claims of indebtedness were ever registered in favor of Precinct No. 4, as required by Article 1625, supra.  No scrip or other evidence of indebtedness was issued by Precincts Nos. 1, 2 or 3, to Precinct No. 4.

The holders of the outstanding scrip against Precincts Nos. 1, 2 and 3 have vested interests in the funds of

said precincts to the full extent of claims as evidenced by such scrip, and the Commissioners' Court of Limestone County has no power or authority to decree a preference, thereby impairing such vested rights of creditors of Precincts Nos. 1, 2 and 3 by paying out the funds of said precincts to Precinct No. 4.

Therefore, under the foregoing authorities, it is our opinion that your first question should be answered in the negative.

In answer to your second question, it is our opinion that Precinct No. 4, in order to be reimbursed for the funds advanced to Precincts Nos. 1, 2 and 3, must have its claims against said precincts registered and scrip issued for the respective amounts of said claims, the scrip so issued to be paid out of the appropriate fund in the order of registration.

With reference to your third question, assuming that the surplus money of Road District No. 4 is the proceeds of bonds issued and sold by said district, or a part thereof, it is our opinion that this question should be answered in the negative for the reasons set forth in opinion No. O-3851, a copy of which is enclosed herewith.

We now consider your fourth question. It is our opinion that the order of the Commissioners' Court quoted above is void, in that it constitutes a transfer of the money from the funds which are allocated to Precinct No. 3 in violation of the rights of the scrip holders of said Precinct No. 3. (Also see the case of Stovall v. Shivers, 103 S. W. (2d) 363.)

Yours very truly

APPROVED JUN 18, 1942

(signed)  Grover Sellers

FIRST ASSISTANT
ATTORNEY GENERAL

AW:GO

ENCLOSURE

ATTORNEY GENERAL OF TEXAS

By                          (signed)
              Ardell Williams
                      Assistant

APPROVED
OPINION
COMMITTEE
BY B.W.B.
CHAIRMAN

W.J.F.